Thank you. May it please the Court. My name is Ben Hodges. I'm here on behalf of the Appellant Enterprise Management and Dr. Lippitt. I'd like to reserve approximately seven minutes of time, if I may. We'll do our best. Okay. Keep your eye on the clock. It counts down. And we'll try to help. I will do so. In this case, we've identified multiple different errors at different stages of the proceedings. From summary judgment through motions in limine, jury instructions, and even post-trial motions in practice. But fundamentally, at least the most impactful of those errors that we've identified all revolve around Dr. Lippitt's ability to claim ownership and protect her managing complex change chart. Now, there were two charts at issue in this case, managing complex change, and then her later aligning for success. Through a series of different rulings, both in summary judgment and then later expanded upon during motions in limine, the Court effectively prevented Dr. Lippitt from claiming any ownership or preventing any copying of her managing complex change chart, which was her original chart that she created. Yeah. She contends that that was copyrighted in the 1987 submission. Yes. We contend that it was copyrighted explicitly in the 202 submission in 1987, and then also included through the effective registration doctrine in her two later copyrights, the 226 and the 350 copyrights. And in one of those two later, she mentioned it, and the other she did not. Is that correct? Correct. In the 226, it was not identified as a prior work, and the 226 did not identify itself as a derivative. In the 350 registration, she did identify the 350 registration as a derivative registration, and she did identify managing complex change as a prior work. Yeah. We think the errors began with the District Court's decision on summary judgment. On summary judgment, the District Court decided that because there was no record of the deposit material given to the Copyright Office, Dr. Lippitt could not proceed with a copyright claim under the 202 registration. It's not disputed that Dr. Lippitt filled out a registration for the 202. It's not disputed that she believed it covered the managing complex change, and she gave deposit material at the time. It's also not disputed that the Copyright Office, over time, discarded that deposit material. Dr. Lippitt did not know that the Copyright Office could discard the material. The Copyright Office doesn't make that very clear to applicants. And she had not kept a copy herself, an exact copy of what she gave the Copyright Office with the claim. So if I understand it, she has a copy of the MCC chart. She does not have a copy of the 1987 submission. Correct. She has multiple copies of the managing complex change chart. She did not keep a, for instance, the way the Copyright Office would, a certified copy of everything that was given as a deposit material. Excuse me, if I could ask a question. The district court seemed to think that her declaration was not enough. Why would that be enough to create a genuine issue of material fact that she had registered the managing complex change chart? Well, because I think both the Tenth Circuit previously and the Enterprise Management v. District have said an applicant's testimony is sufficient to create a genuine issue of fact. Keep in mind, Dr. Lippitt did not move for summary judgment on this. We would freely admit that the lack of deposit material would preclude her ability to gain summary judgment. But it should have been an issue for the jury to determine whether or not her testimony was sufficient. In effect, it became a credibility issue. And as this court has held multiple different times, and as we've cited in our briefing, credibility should have been left to the jury. Now, in this case, the court took it away from the jury early on during summary judgment and said, you cannot even present any evidence that she, of what her testimony is, was contained in the 202. In this case, there was, as you pointed out, Your Honor, there was declaration testimony, seen at ER 174. The declaration is 173 through 178. That said, you know, I gave the Managing Complex Change Chart as part of the deposit materials for the 202. Now, it's true she couldn't remember every page with exact detail, but the district court's requirement created a heightened requirement that she have this perfect recall of everything, which, keep in mind, this is 30 years later of what was in there. And it's true she could not remember, for instance, if some words were singular or plural or what would have appeared on every single page. But that, nonetheless, has been seen in this district and in others, as I said in the previous enterprise management case, in the McGuckin case, for instance. Her testimony alone was at least sufficient to create a triable issue of fact for the jury. And so the district court erred in granting summary judgment on that. Beyond that, the district court then expanded that error at Motions and Lemonade when its ruling stated that the next two registrations, the 226 and the 350 registrations, also could not cover the Managing Complex Change Chart. As we cited in the briefing, there's multiple cases stating that a derivative application can cover the original material and the derivative material. And in this case, it was clear that Managing Complex Change, and Dr. Lippitt had multiple pieces of testimony, both in her declaration and a trial, about how the Aligning for Success Chart came to be. And it was through changes that she made to the Managing Complex Change Chart that evolved it to the Aligning for Success Chart. So there is no dispute that the Aligning for Success Chart is derivative of her Managing Complex Change Chart. Well, the magistrate judge seemed to have thought that there was a dispute because the magistrate judge says, well, in one of them, you did not list it. Am I accurately representing what the magistrate judge thought or said? You are accurately portraying it. I don't think there's two slightly different issues. That 226 was not identified as a derivative, but the underlying work involved, I don't think there's a dispute that the Aligning for Success Chart is derivative of the Managing Complex Change Chart. How it was portrayed in the registration certificate, the court decided that because it was not for the 226, we've already discussed the 350 does identify it, for the 226, the court found that simply not identifying it precluded the ability for Dr. Lippitt to claim protection and ownership through that. As the Supreme Court noted last year in the Unicolor's case, putting this standard onto a copyright applicant to have this exactly right registration with everything checked correctly puts a burden on an applicant that should not be applied in this case or in other cases. In effect, it says it would allow an infringer to say, well, yeah, we took this, but you didn't fill this out correctly, so therefore, we get to do it. That, in effect, is what happened here. The operative complaint, I guess it's what, the First Amendment complaint? Yes, Your Honor. Does distinguish between the charts and the registrations. I read it, and in paragraph 22, it identifies the Managing Complex Change Chart, which is protected under the 202 registration. The next paragraph talks about the two Aligning for Success Charts, identifies those being  The other thing that you have to deal with is that your allegation, as phrased in your complaint, seems to limit the Managing Change Chart to the 202 registration. Regarding pleading standards, first of all, we don't think constructs correctly raise that, and so it shouldn't be an issue here. But beyond that, we are dealing with notice pleading. Well, what notice did you give in that pleading, or anywhere, and I understand your argument is that it came out elsewhere in the litigation, but where is it established that the MCC chart is protected by the subsequent registrations, if not by the 202 registration? I think the notice requirement here is satisfied with saying we've put constructs on notice that they infringed both these registrations, and that Where did you put them on notice? In the complaint. Well, I just read you from the complaint, and it seems to say the MCC chart is protected by 202. Is there some other paragraph that says it's protected by other registrations? I will admit I don't have the complaint in front of me, Your Honor, but I can follow up on that. I think that it is sufficient to have put constructs on notice that we believe that they infringed all three of the registrations, and that they infringed both of the aligning for success chart and the managing complex change chart. I think more exacting standards than that, I think, as noted by constructs moving for summary judgment against the managing complex change chart, and moving at multiple times for motions to dismiss, they knew there was allegations that they infringed the managing complex change chart, I think. And your complaint has it, but it identifies the 202 registration as the source of your complaint. And with that, I notice I've already gone over the time that I wanted to. We'll make sure you get enough chance to respond. I've got a question that I don't wish to intrude on the privacy of settlement negotiations, but it does strike me, and I don't mean any disrespect to the nature of the litigation here, but this is a pretty small potatoes case. It surprised me that this didn't settle. Again, noting, as Your Honor did, as we don't want to intrude too much, I would agree with that. It surprised me that it did not settle as well. Any further questions from the bench at this time? Okay, thank you. Morning, Your Honor. May it please the Court. I'd like to begin by addressing a question of the Court about the relation back or indications of preexisting material in the subsequent two registrations, the 226 and the 350. The Court mentioned that in one registration it referenced the chart referring to the 350, saying in the other one it didn't, the 226. And I think that's not quite correct. There were three copyright registrations at issue, the 202, the first one from 1987. That's the one on summary judgment that allegedly had the managing chart and was dismissed on summary judgment. Then we have the next two. The 226 is a lengthy sheaf of materials that includes the aligning for success chart in it and says no preexisting material, not a derivative work. The 350, later in time, a four-page document, does say that there is preexisting material in the 202, does not say, though, that the managing chart was preexisting, does describe generally the nature of the preexisting material as saying that this four-page document in the 350 updates and summarizes, but does not identify the managing chart as preexisting material. So there is no reference back to it. What we had on appeal here in Enterprise's brief was, for the first time, the argument that there was an express reference in the 350 back to the managing complex change chart in the 202. That argument doesn't appear in the record below. It's new, but it's not accurate anyway. There is no reference back to the fact of the inclusion of the chart in either the 226 or the 350. Can you address the argument that the general principles in Unicolors about a certificate of registration being valid even if it contains inaccurate information is applicable here? I think there's an important distinction that we have to bear in mind on that question, which is whether there's a challenge to the validity of the registration versus whether we are analyzing the scope of the coverage of the registration. And when there is an omission of the type that we see here, assuming for the sake of argument, by the way, that Dr. Libet did originate the managing chart, and we still maintain that she, the record shows Dr. Ambrose did so. But we have an omission, let's say, for the sake of argument here. Record may support that theory, but it's hardly uncontested. I mean, the argument that Dr. Ambrose was the originator is... It was not contested at trial because we didn't need to, because the managing chart was excluded. But we can't take it as a given here. That's true, Your Honor. So if I may return to the question before me about the validity of the registration, if there is an omission of a reference to preexisting work, and if it's proven to be something that should have been but was not in the registration, two things can happen. One is, if it was an intentional omission, it can invalidate the registration. We didn't make that argument here. We'll trust for the sake of argument here that the omission, if it was an omission, was inadvertent. The other thing that can happen, though, and should happen here, is the scope of the registration now is confined to what you said it covered in the registration certificate. Now, you say the... Which registration are you now talking about? The 202. Well, now we're moving into the effective registration, Doctor. The 226. We're looking at the 226 and the 350. So those don't say the managing complex change chart was preexisting work. And because of that omission, if it was intentional, to answer your question, Your Honor, it could invalidate the registration at all so that Dr. Lippitt and Enterprise could not come forward in court at all because their certificates are invalid if it was intentional. We didn't argue that, and we won't. But if it was inadvertent, then the effect is that she can only proceed in court with what she registered. And what she I guess the argument is that the aligning for change or whatever, aligning the AFS chart was registered, was registered by one of these, 350 or the 226. And to the extent, at least to the extent that it's the same as or has the same elements as the managing complex change chart, then it would register that chart as well, since you could register a copyrighted work at any time. I think that's if I understand that argument, that's that's one of the arguments they're making. Is that erroneous? I believe that's an argument they're making as well, Your Honor. I believe, though, that there's a very subtle distinction. There is plenty of authority out there addressing situations where a derivative work covered in a registration is thereby infringed. And there's a very important but subtle point. Most often what happens is the underlying work contains or sorry, the the registered later derivative work contains the exact thing that was the underlying preexisting material. And the bulk of the jurisprudence in those work that was registered and copies that work, whether the scope of that registration also encompasses the preexisting content that was also bodily included in the later registered work. That's not the argument here. What we have here is a slightly different one. What we have is there was no access to the registered work. The alleged access was to the into the registered work. And in that case, we would submit that the certificate of registration, when it does not mention that preexisting underlying work, does not allow under 411 and 4099 an action in court for access only to the so-called underlying preexisting work and not the registered work. Can I address the or ask you to address the 202 copyright, that is to say the 1987 copyright. It's uncontested that something was registered. The question is what's in it. Is your position that you can never use extrinsic evidence to show what was in the registration? Not at all, Your Honor. And in fact, in that case, why is her extrinsic evidence not enough? It seems to me pretty strong evidence. She says, listen, I've got the chart. My recollection is it was in the materials. The later AFS charts are very similar. I mean, why isn't that not a jury question? Because you've already told me extrinsic evidence can be used. So why is that not sufficient to get to the jury? Yes, Your Honor, can be. And I would agree typically is because I think in most copyright cases, so my question is, why is that not enough to get to the jury? Your Honor, I think the issue here is the distinction between a credibility issue and a corroboration issue. And it's my I would submit you need corroboration. Usually one witness testimony is enough. I think, Your Honor, if I may, the common thread among the declaration cases that have been submitted before the court is that it wasn't just a declaration of loan. It was a declaration coupled with something tangible where the declaration says this thing that actually existed is the thing that I registered. We don't quite have that here. And there have been references to what she said is this thing or something very like it because she and it seems to be uncontested, refined, changed, altered, trimmed, amended. She has a basic chart that has pretty clear. And as I looked at the testimony, you've cited her testimony as saying she didn't know. But it seems that her comment had to do with she didn't know whether the particular form of the chart that was being offered up at that time was in the registration. She did seem confident that one of the variants on the theme was included. So why is more corroboration needed than that? Your Honor, I would submit in this case that one of the key problems is that this chart was one piece among 30, 40, 50, whatever pages. The chart itself has about a dozen words in it. And so it's so small in terms of the amount of authorship that idea and expression start to get very close to one another. In order to do the extrinsic and intrinsic test, you have to see the thing that she did. So you're not arguing that this chart is incapable of protection under the copyright law? No, Your Honor. Okay. So you're not arguing that. So what is it that was insufficient about her testimony that this chart or a variation on the theme was within the material submitted as part of the 202 registration packet? The problem we would submit, Your Honor, is that we don't have the chart that she did were created later in time, coupled with testimony saying that, I don't know what version was in there. Some chart, something along these lines was in there. And then, of course, with the 202 certificate. The argument you've made to us in your brief didn't seem to be so much, I don't know what version. It seemed to be, I don't know if the chart was there. And that doesn't seem to be consistent with the testimony as I look at it. And if it's not, then I'm still puzzled as to what was deficient about her testimony that couldn't establish a genuine issue of material fact. Your Honor, for the record, I understood her answer at the time of that deposition to be, I don't know if this chart was in there. The version argument is now advanced for the first time on appeal. That argument was not part of Enterprise's argument below. So the version argument is kind of new now. I've been saying for a long time that the Managing Complex Change chart was within that registration package. She said that in the declaration in opposition to the summary judgment. Yes, Your Honor, she did. So it's not like that's brand new. That part is not new. She said something called Managing Complex Change was in there and it was a tabular chart. How much we concede. Well, she said it more precisely than that in paragraph four of her declaration. She says, well, it is true. I cannot remember the exact content of every single page after 30 years. I do know that the document contained the chart and I am aware of the document's key components. The 202 registration contained the chart Managing Complex Change. She's pretty clear. You can disbelieve her, but she's pretty clear. Your Honor, my point was not to disbelieve her for purposes of this argument, but rather to submit that she said, as the Court has observed, that there were potentially different versions and the ones that existed with the, that were submitted with the declaration and in her deposition were both different and created later in time. So if there's a reason, if I may. Your brief says no reasonable jury could have believed the managing chart was included in the 202 registration when Dr. Lippitt admitted that even she does not know whether it was. And her admission was pretty clearly as to a particular version of the chart. I don't see anything that supports the proposition that she didn't know that a version of the chart was there. And yet that's the argument you're trying to sell us. I mean, there's a real disconnect here in my mind. And if there's some answer to that, I'd like to hear it. Well, the answer to the disconnect, if I may, Your Honor, is, is I understood her in the deposition to be saying just that. I don't know if it was in there. And the, the version argument was not advanced by Enterprise below either. I think that's what they thought that she said in the deposition. Our declaration makes very clear that's not the position. So, okay. I agree, Your Honor, with that. That, that, that much is true. And if I may then return to, to the second half of your question, which is her declaration having said that, why does that not create a question of fact? And, and I would submit that if there was a managing chart in there, we don't know what managing chart was in there. And given the very small amount of, of authorship and originality in this kind of material, it's important to know what chart is in there so we can do a comparison. Well, but the differences among the variation, variant MCCs and the A of S chart, they are trivial differences. I don't know whether I would agree with that or not, Your Honor. I should say they're small differences. Would you agree with that? Well, they're tabular. Most of the words are the same. Yes, that, if that amounts to the same. Maybe you've got pluses instead of arrows. One word is different. But there's a very strong, I'll say, family resemblance. That's a possible conclusion, Your Honor, if you look at aligning. I can't go that far. It's hard for me to do that because of the jagged line and the circles and the different titles. I think the aligning chart goes quite a bit astray from, from the managing chart. That may, that may be a jury question. What exactly is the difference between a rectangular box and an oval? How does that matter? Your Honor, it would matter if... Or the buttons in the third one. It would matter if we're, we're trying to do the extrinsic and intrinsic and dissect things that are sent a fair and ordinary ways of conveying speech and what the idea is and separating that from the expression. Then it matters if that's the case. If the court the words in tabular form without those things is also expression, then it wouldn't matter at that point. I see my time is just about up, Your Honor, if there are no questions. Any further questions from the bench? Okay. Thank you very much. Mr. Hodges, you've saved some time. Yes. Thank you, Your Honor. I'd like to start where counsel did as well on the 350, just briefly. We've identified at page 20 of our reply brief that cites ER 254. The 350 does identify managing complex change. It's under the category of previous or alternative titles. I would say, well, if the argument is, well, it should have been in a different box, I should not be the thing that limits a copyright holder's ability to protect and proceed under a registration. As to some of the other points that Your Honors were asking, especially in regards to the 226 and the fact that it did not disclose, I think if you look at the Lego AS case that we cited, 404 FSUP 3D 583, it specifically talks about that when it's the author's own underlying work, there isn't a need to describe it as derivative. The idea of the need to describe something as derivative is to put somebody on notice of, I don't own this particular part of it. Well, in this case, when it's the author's own underlying work, the author owns all of it, and so there isn't a need to do that. And if you look at the Lego case, especially at page 600 to 601, it actually contains a very long paragraph citation of other cases that hold the same. And addressing the versions issue very briefly, if the issue for the 202 was which exact version, I would submit that that is a jury question in and of itself. But if we're going to argue that, well, maybe it was a different version, that gets us straight into the effective registration for the 226 and the 350. Because if the argument is that, well, the 202 must only have registered one exact version, and you can't prove with exact certainty which version that is, well, the doctrine of effective registration says she still owns every version. And so the fact that multiple different versions might have existed and, well, did exist and evolved into the aligning for success chart, well, she owns all the versions, and she can protect all the versions under the effective registration doctrine for under the 226 and the 350. When you say she owns and can protect, maybe I could use your assistance in letting us know what elements we should be focusing on. I mean, it can't be that she's claiming that any kind of chart that's like five boxes by six boxes is unique to her. What is it that she contends is actually protected in this set of charts and set of registrations? You are correct, Your Honor. We've never advanced the theory of, like, she owns boxes or she owns a chart. But that's not the elements of infringement here. It's not just the construct used boxes or circles or a chart or arrows. It's that they used the same words at times or similar, you know, synonym words or very small differences. So it's not that we're saying, hey, you can't have a chart that describes change. It's we're saying you can't have a chart that looks basically exactly the same as ours with the same organization, the same words, the same everything in it has that similarity. We would have a very big problem if we had tried to assert an infringement claim just because you've got a chart with this many boxes and it's about change. But that's not the issue in this case. The issue, as we said, is that through these series of rulings, the district court effectively said managing complex change is free reign. You can take that if you want, grab it from whatever source it's yours to use. But Dr. Lippitt didn't ever give the managing complex change chart in the public domain, which is effectively what the district court did. And so she deserves the right to proceed to a jury to say, I created not only aligning for success, but managing complex change. And you can't take either one of them. You can't access either one of them. You can't copy either one of them. The district court's decision on summary judgment precluded that as to the 202. And then the argument to the jury who did not get a full picture because of the motions eliminate ruling. So all that we are asking for now is the chance to go back to the jury to let them have the full picture of what it means to what Dr. Lippitt created and what she's protected. Let me make you work overtime for a second to be clear. There are lots of arguments here. I understand why both sides have to argue in the alternative. What is it you seek from us? We seek that this case be remanded back down to the district court, that the summary judgment opinion be reversed. And which I believe once the summary judgment opinion is changed, everything else has to be redone in light of the ability to say, well, what would the jury have said? No one knows what the jury would have said. Though neither of us addressed it here, we've also raised an issue with the independent creation jury instruction, which we also believe would need to be revisited if we went back down to say no independent creation. Well, first off, whose burden is it? And second off, you can't take something that somebody else already took and call it independent creation. If you're going to independently create something, it's your burden to prove that you've actually independently created it or at least taken it from a source that has no connection to the plaintiff in the case. Okay. And any further questions from the bench? Thank both sides for useful arguments. Enterprise Management Limited versus Construct Software Builders submitted for decision. And that's our only case for this morning. We're now in adjournment. Thank you. Thank you very much.
judges: FLETCHER, CLIFTON, IKUTA